ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* GREEN.

Opinion delivered January 13, 1908.

CARRIER—DUTY TO ASSIST PASSENGERS—DEGREE OF CARE.—It is error, under ordinary circumstances, to instruct the jury that a carrier, undertaking to assist a passenger in entering a car, is bound to exercise the highest degree of care; its duty being limited to the exercise of ordinary care in such case.

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

### STATEMENT BY THE COURT.

The plaintiff, Mattie E. Green, filed her complaint in the Clark Circuit Court, alleging:

That the defendant, St. Louis, Iron Mountain & Southern Railway Company, is a railroad corporation, operating a railroad, which passes through Witherspoon, in Hot Spring County, Arkansas; that plaintiff on the 11th day of August, 1906, undertook to board its south-bound passenger train for Arkadelphia, before it had pulled up to the station, by direction of an employee of the defendant, and that said employee was careless and negligent in assisting her to get upon said train, causing her to fall, wrenching her back, etc., causing her to be unable to use her left arm and to perform her household duties, and causing great pain and suffering; and prayed for damages in the sum of three thousand dollars, and for other relief.

The defendant denied each and every material allegation of the plaintiff's complaint, and set up that, if the plaintiff was injured at all, it was by reason of her own contributory negligence, and prayed to be discharged, having answered.

This cause came on for hearing before a jury duly impanelled, on the 11th of February, 1907, at the January term of the Clark Circuit Court, and the following testimony was introduced:

Mrs. Mattie E. Green, the plaintiff, being first duly sworn and examined, testified in substance as follows, to-wit:

That she is the plaintiff; lives at Witherspoon, a station on the defendant company's line of railroad; is a married woman; Witherspoon is about five miles from Arkadelphia; that she was at the station for the purpose of getting on the train on August 11, 1906, to take passage to Arkadelphia, Arkansas, and was injured there; that there was a platform at the station, and when she started to board the train she did so under direction from a man in the uniform of a railroad man; the platform is pretty long; that there were two fellows getting on the darkey coach, and she thought she would get on there and walk through; the platform is on the right hand side or she thinks her left hand side; east side she thinks in coming to Arkadelphia. That they did not pull her coach up to the platform, when it reached there; the first passenger coach was the darkey coach, and that reached the platform; the white coach did not reach the platform, although it was just behind the black coach; that she was standing in the middle of the platform, when the train reached the station; that she was told to get on down at the white coach and get on in a hurry, when she started to get on the darkey's coach; that she offered the man her baby, and started to get on, and he gave her a push, and she started to make a step and fell, and swung there on one arm. That she started to get on the south end of the passenger coach; that her baby was in her right arm, and when she was shoved she caught on to the handhold with her left arm; that Mrs. Allen, who was with her, tried to assist her; that she was trying to get up the steps at the time; that he gave her a shove and turned her loose; that the weight of the baby on her arm caused her to fall back when he turned loose of her; that she commenced falling backwards, and swung around on the handhold, facing north, the way the train had come; that she was hurt by falling backwards; it hurt her arm and back; that she has had medical assistance, and has suffered nearly all the time with it; that her back was hurt.

Other testimony was adduced by her tending to corroborate her statements, and to show the extent of the injuries received by her.

Mr. Hawkins, a witness for the defendant, testified as follows: That he is a brakeman on the Iron Mountain, on trains

Nos. 805 and 806, what is known as the short train; knows Witherspoon station; they pass there in the morning going south; that they carry a step box to assist passengers to get on and off that train with, and are never without it; does not remember any occasion when this plaintiff claims to have been hurt by swinging around on the steps; that he does not remember having helped some ladies on about the 11th; that there was nothing about that time that would indicate that there was any trouble or any injury to a lady; that if there had been he would have remembered it; that there was nothing that attracted his attention; that if a lady had got hurt he would have taken note of it; that, when they do not stop at the platform, they put the step box down, and it makes it as high as the platform.

The testimony shows that the place where plaintiff got on the track was a smooth cinder platform raised to the level of the tracks, and about thirty or forty feet long.

There was a verdict and judgment for plaintiff, and defendant has appealed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

The first instruction is erroneous. "Where access to a train is easy, it is not required of the company's employees to assist passengers in getting on board." 113 Mo. 570. Having provided suitable and safe means for passengers entering and leaving its cars, and stopped its train in proper position and for a reasonable time to enable passengers to avail themselves of these means, the company is not bound to render personal assistance. 31 Am. & Eng. R. Cas. 45; 30 *Id.* 596; 74 Ia. 732; 34 N. W. 621; 106 N. Y. 136. Since it is not a duty imposed on the company to furnish personal assistance, if its employees volunteer to do so, it could only be held to exercise ordinary care. 2 Hutchinson on Carriers (3 Ed.), § 941 and note 50; 65 Ark. 255; 106 N. Y. 136; 112 N. Y. 442; 50 Fed. 755; 59 Ark. 185.

*Jos. E. Callaway,* for appellee.

The instruction is correct. 6 Cyc. 611 and notes.

HART, J., (after stating the facts.) Appellant claims that the first instruction given by the court was erroneous. The instructions are as follows:

"You are instructed that the defendant railway company, if it undertook to render plaintiff assistance, was bound to the highest degree of care in securing the safety of the plaintiff in boarding its train, which is that degree of care which a very prudent person would have exercised under the circumstances; and if you find from the evidence that the defendant railway company, through its servants or employees, did undertake to assist plaintiff to board the train, and failed to discharge this duty, and plaintiff was injured thereby, your verdict should be for the plaintiff."

Counsel for appellee to sustain the instruction quotes the following: "The carrier is bound to exercise care in securing the safety of passengers while boarding or alighting from its cars or other conveyances, and the degree of care required in the discharge of this duty is the highest care, or that degree of care which a very prudent person would have used under the circumstances." 6 Cyc. 611, and notes. A reference to the cases cited in the notes will show that the doctrine announced applies only where there is some unusual danger or difficulty arising from the place or means afforded for entering or alighting from a train. This is but an application of the principles laid down by this court in the case of *Railway Company* v. *Rexroad,* 59 Ark. 185. The rule is that the carrier is held to the highest degree of care in the management of its trains, for the reason that in that respect the passenger can do nothing to insure his own personal safety.

In the present case there were no unusual difficulties. Appellee was attended by two friends, who could reasonably be expected to assist her with her child, if any assistance was needed. There was a smooth cinder platform on a level with the rails and a stool upon which to mount to the first step. The train stopped at the usual place. Under the circumstances there was no duty devolving upon appellant to assist appellee in entering the train. 2 Hutchinson on Carriers, § § 1112 and 1127; 6 Cyc. p. 611 and notes; *Yarnell* v. *Kansas City, F. S. & M. R. Co.,* 18 L. R. A. 599.

But it is admitted that the brakeman attempted to assist her. Having undertaken a duty that it was not required to perform, the carrier was only bound to use ordinary care in

discharging that duty. It is like the kind of care that is required in respect to station arrangements. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Fairbairn,* 48 Ark. 493, COCKRILL, C. J., said: "But the company is bound to use ordinary care to keep its platforms in a safe condition for the benefit of those who have the legal right to go upon them."

For the error in giving the first instruction the case is reversed and remanded.