### DALY *v.* PERE MARQUETTE RAILROAD CO.

1. TRIAL—ARGUMENT OF COUNSEL.

It was highly improper for counsel in a personal injury action to state after the jury returned to the room that the opposing counsel "had the gall, the nerve, as you stepped out 15 minutes, to ask to direct another verdict."

2. SAME.

In an action against a railroad for personal injuries argument of counsel commenting on the extent of plaintiff's injuries and the liability of the company was improper.

Error to Berrien; Bridgman, J. Submitted June 7, 1917. (Docket No. 14.) Decided July 26, 1917.

Case by John Daly against the Pere Marquette Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Parker, Shields & Brown* (*Gore & Harvey,* of counsel), for appellant.

*O'Hara & O'Hara,* for appellee.

MOORE, J.   This action was brought to recover damages for injuries received at a highway crossing.   The plaintiff was driving a team of horses attached to a pair of bob sleighs.   While crossing the railroad track one of the runners to the sleighs stuck, and plaintiff was thrown forward and hurt.   It was his claim the crossing was out of order.   From a judgment in favor of the plaintiff the case is brought here by writ of error.

There are several assignments of error, most of which relate to the conduct and argument of counsel. In the oral argument counsel for appellant insisted only upon those assignments of error relating to the conduct of counsel and his argument to the jury.   We shall not quote all that is disclosed by the record of what was said by counsel.   Some of it does not look well on the printed page.   Some of the utterances are as follows:

"Today he (meaning Mr. Gore) had the gall, the nerve, as you stepped out 15 minutes, to ask to direct another verdict.   He did that a few minutes ago.

*"Mr. Gore:* We object to the argument of the counsel, stating what took place in the absence of the jury, and to the use of the words 'fiddler's bitch' in that connection.

*"The Court:* I think you ought not to comment on what took place there.

*"Mr. O'Hara:* He did not want you folks to hear that motion.   I said I would just as soon have the jury hear that motion.   He made some sort of motion here; the motion didn't seem to take very well, because we are here, so whatever motion he made it must have been denied.   *   *   *

"That is three years ago.   He has suffered as he tells us all those years.   The doctor says he may suffer the balance of his days.   He says there is only one remedy, and that may not be effectual, that is, to break it over again and set it back.   Some may get it in

their minds, but get it right out of your mind, it don't make a particle of difference whether Dr. Kerry did a good or a bad job, the railroad company must respond for it be it a good job, bad or indifferent. Do not think for a moment if some better surgeon had been employed and those parts had come together as they ought to have, and the suffering would have lasted perhaps a month or two or three, and that the railroad company ain't responsible because it comes this way. The railroad company is; they caused it, their negligence caused it, and it don't make a particle of difference whether Kerry did a good, bad, or indifferent job, the railroad company has got to respond if this man is still a sufferer. * * * And, as Dr. Taber says, his nerves—I don't know much about physiology and anatomy — it affects those nerves, drawing that shoulder, causing that pain. Dr. Taber says it may last the balance of his life, and the only remedy is to break the shoulder again and see if you can't get it right. That is the situation, gentlemen. Would you want to run any chance? My God! What assurance is there if they break it over, break it again, there would be any better union? The courts very wisely say in a case of that kind the defendant who is responsible for the injury in the first place must respond in damages. We have asked for $20,000. You would not take $20,000 to undergo the punishment that man has undergone, or I wouldn't, and none of you, not one of you."

We cannot understand how counsel will be so unjust to clients as to make arguments which counsel must know are improper, and, if they are at all familiar with the decisions of this court, also know will result in the reversal of the judgment. Some of the cases are: *Cluett* v. *Rosenthal,* 100 Mich. at pages 199, 200 (58 N. W. 1009, 43 Am. St. Rep. 446) ; *Strudgeon* v. *Village of Sand Beach,* 107 Mich. 505 (65 N. W. 616) ; *Britton* v. *Railroad Co.,* 118 Mich. 493 (76 N. W. 1043) ; *Mott* v. *Railway Co.,* 120 Mich. 135 (79 N. W. 3) ; *Smith* v. *Jennings,* 121 Mich. 395, 397 (80 N. W. 236) ; *People, ex rel. Esper,* v. *Plank-Road Co.,* 125

Mich. 366 (84 N. W. 290) ; *Johnson* v. *Railway Co.*, 135 Mich. 353, 360 (97 N. W. 760) ; *Hillman* v. *Railway*, 137 Mich. 184 (100 N. W. 399) ; *Hughes* v. *City of Detroit*, 161 Mich. 288 (126 N. W. 214, 137 Am. St. Rep. 504) ; *Morrison* v. *Carpenter*, 179 Mich. 221 (146 N. W. 106, Am. & Eng. Ann. Cas. 1915D, ·319) ; *Wells* v. *Railroad Co.*, 184 Mich. 16 (150 N. W. 340) ; *Jolman* v. *Alberts*, 186 Mich. 645 (153 N. W. 11) ; *Mortensen* v. *Bradshaw*, 188 Mich. 442 (154 N. W. 46).

The argument was highly improper.

The judgment is reversed, and a new trial ordered, with costs to defendant against the plaintiff.

KUHN, C. J., and STONE, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.   OSTRANDER, J., did not sit.